

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 23, 2022

BY CM/ECF

The Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    United States v. Puneet Dikshit
               21 Cr. 760 (CM)

Dear Judge McMahon:

      The Government respectfully submits this letter in advance of the sentencing of defendant Puneet Dikshit, scheduled for March 30, 2022. Dikshit pled guilty to one count of securities fraud in connection with an insider trading scheme. For the following reasons, a sentence of imprisonment within the applicable Guidelines range of 30 to 37 months would be sufficient but not greater than necessary to comply with the purposes of sentencing.

      As a McKinsey & Company ("McKinsey") partner leading the team that was advising The Goldman Sachs Group, Inc. ("Goldman Sachs") on its $2.24 billion acquisition of GreenSky, Inc. ("GreenSky" or "GSKY"), Dikshit had privileged access to sensitive and confidential information about the transaction. Rather than use the information solely to serve the interests of his client, as he was obligated to do, Dikshit violated the duties of trust and confidence that he owed to Goldman Sachs and to his employer McKinsey, and used the information to enrich himself by trading out-of-the-money GSKY call options that were due to expire just days after the transaction was announced. Dikshit's insider trading earned him approximately $450,000 in illegal profits.

      In light of these facts, and as detailed below, a sentence of imprisonment within the applicable Guidelines range is necessary to reflect the seriousness of Dikshit's crime, afford just punishment, promote respect for the law, and deter corporate advisers in positions of trust from stealing client secrets and breaking the law for personal gain.

      A.    The Offense Conduct

      The Government agrees with the statement of offense conduct set forth in the presentence investigation report, dated March 8, 2022 ("PSR"), which in summary was as follows. (PSR ¶¶ 9-57).

The defendant Puneet Dikshit was a partner in McKinsey, the global management consulting firm. There, he led McKinsey's unsecured lending practice in North America, advising lenders, acquirers, fintechs, and networks relating to payments and consumer finance.

Between approximately November 2019 and July 2020, and again between approximately April and September 2021, Goldman Sachs, the global investment bank, engaged McKinsey to provide consulting services in connection with Goldman Sachs' potential and actual acquisition of GreenSky, a publicly traded, financial technology company. McKinsey's work for Goldman Sachs included conducting due diligence on GreenSky and providing anticipated post-acquisition integration consulting services. Dikshit was one of the lead McKinsey partners responsible for this engagement. Dikshit thus had access to maternal nonpublic information ("MNPI") about the Goldman Sachs-GreenSky transaction, including that (a) Goldman Sachs was seeking to acquire GreenSky, (b) GreenSky had accepted Goldman Sachs' acquisition proposal on September 9, 2021, (c) Goldman Sachs had retained McKinsey on September 13, 2021 to help integrate GreenSky into the bank after the transaction closed, and (d) the general timing of the public announcement of the transaction, which ultimately took place on September 15, 2021.

Between July 26, 2021 and September 15, 2021 — at the same time that he was leading the McKinsey team advising Goldman Sachs on the GreenSky acquisition — Dikshit engaged in an egregious insider trading scheme. He misappropriated MNPI about the transaction that he had learned through this engagement, and in violation of duties that he owed to both Goldman Sachs and McKinsey, and used that information to trade GSKY call options. At various times between July 26, 2021 and September 13, 2021, Dikshit purchased and sold relatively small numbers of GSKY call options, which had expiration dates weeks or months from the time of purchase. However, in the two days before the September 15, 2021 public announcement that Goldman Sachs would be acquiring GreenSky, Dikshit sold all of these longer-dated GSKY call options and purchased approximately 2,500 out-of-the money GSKY call options that were due to expire just a few days later, on September 17, 2021. After the deal was announced, Dikshit sold these call options and realized illegal profits of approximately $450,000. Dikshit engaged in these illegal transactions at times minutes after talking to his client Goldman Sachs, in both his and his wife's brokerage accounts and at times using his McKinsey-issued computer.

B.  The Guilty Plea

On November 10, 2021, the defendant was arrested, pursuant to a criminal Complaint that charged him with two counts of securities fraud, in violation of (i) 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2 ("Title 15 securities fraud"), and (ii) 18 U.S.C. §§ 1348 and 2 ("Title 18 securities fraud"). On December 15, 2021, the defendant waived indictment and pled guilty, pursuant to a plea agreement, to a one-count Information that charged him with Title 15 securities fraud.

C.  The Applicable Sentencing Guidelines

The Probation Department's Sentencing Guidelines calculation of 30 to 37 months' imprisonment is consistent with the Stipulated Guidelines Range in the plea agreement. (PSR

¶¶ 65-77, 115).  The Government agrees with this Guidelines calculation, as does the defendant. (Def. Mem. 4 (Dkt. 17)).

  D. <u>The Appropriate Sentence</u>

  Under the factors set forth in 18 U.S.C. § 3553(a), the Government respectfully submits that a Guidelines sentence of imprisonment is appropriate and necessary.  Neither a sentence of time served, as recommended by the Probation Department, nor a non-custodial sentence, as requested by the defendant, is sufficient.

  1. <u>The Nature and Circumstances of the Offense, Seriousness of the Offense, Need to Promote Respect for the Law, and Need for Just Punishment</u>

  A substantial sentence is necessary in light of the nature and circumstances of the offense, the seriousness of the offense, the need to promote respect for the law, and the need for just punishment.  *See* 18 U.S.C. §§ 3553(a)(1) & (2)(A).

  Dikshit admits, as he must, that his crime was "serious." (Def. Mem. 27).  But it was more than that.  The defendant's conduct was shocking, egregious, and brazen.  As a McKinsey partner, Dikshit was a "trusted advisor and counselor to many of the most influential businesses and institutions in the world." McKinsey & Company, *Operations at McKinsey*, available at https://www.mckinsey.com/~/media/McKinsey/dotcom/client_service/Operations/PDFS/Operations_at_McKinsey_brochure.ashx.  He well understood the special position of trust and confidence that he held, and that he had duty to protect his clients' secrets.  But in leading the McKinsey team advising Goldman Sachs on the GreenSky acquisition, Dikshit abused that trust and broke the law.  Rather than serve his client's interests, Dikshit stole confidential information about the very transaction he was working on and used that information to commit insider trading, earning approximately $450,000 in illegal profits trading GSKY call options.

  Insider trading causes harm in many forms, including undermining confidence in the integrity of the financial markets, disadvantaging ordinary investors who follow the rules, and violating the confidences of companies and clients whose secret information is stolen.  The defendant agrees.  (*See* Def. Mem. 27 ("insider trading is a serious offense and creates unfairness in investment markets")).  In this case, the conduct carries an added layer of harm because of Dikshit's role in the transaction.  When a corporate advisor cheats and misuses his position so that he can profit illegally from client secrets, the public's confidence in the integrity of the markets is undermined.  Wall Street professionals know better than anyone that they cannot exploit their privileged access to confidential information for their personal gain.  When they do, the investing public understandably will react with cynicism and believe that the markets are rigged.  *See* Insider Trading and Securities Fraud Enforcement Act of 1988, H.R. Rep. No. 100-910, at 7-8 (1988), *reprinted in* 1988 U.S.C.C.A.N. 6043, 6044 ("Insider trading damages the legitimacy of the capital market and diminishes the public's faith . . . . [T]he small investor will be — and has been — reluctant to invest in the market if he feels it is rigged against him."); Insider Trading Sanctions Act of 1984, H.R. Rep. No. 98-355, *reprinted in* 1984 U.S.C.C.A.N. 2274, 2278 (emphasizing that "[t]he abuse of informational advantages that other investors cannot hope to overcome through

their own efforts is unfair and inconsistent with the investing public's legitimate expectation of honest and fair securities markets where all participants play by the same rules"); SEC Chairman Arthur Levitt, *A Question of Integrity: Promoting Investor Confidence by Fighting Insider Trading* (Feb. 27, 1998) ("The American people see it, bluntly, as a form of cheating."), *available at* https://www.sec.gov/news/speech/speecharchive/1998/spch202.txt.

In addition to the harm caused to GreenSky investors who did not have access to the confidential information that Dikshit abused, the defendant's conduct also caused serious harm to his client Goldman Sachs and his employer McKinsey. The two firms have long had a deep and trusted business relationship. Indeed, when Goldman Sachs was considering how to expand its consumer finance business, including through a potential acquisition of GreenSky, the bank turned to McKinsey. When Goldman Sachs' proposal to acquire GreenSky was accepted and the bank needed help integrating GreenSky, Goldman Sachs again turned to McKinsey. In both cases, Goldman Sachs turned to Dikshit to lead the McKinsey teams handling these important mandates. For approximately two years, Goldman Sachs trusted the defendant to provide advice on an important business decision and to keep its business secrets confidential. And McKinsey trusted Dikshit, one of its partners, to handle an important client relationship with integrity. Dikshit failed in both respects.

Dikshit knew better. He is highly educated and has enjoyed continued success during his career, evidenced by his election to partner at one of the most prestigious consulting firms in the country. Having joined McKinsey in 2013, he was also well aware of the damage done when another McKinsey partner committed a nearly identical crime. In 2012, Rajat Gupta, the former global corporate chairman of McKinsey, was found guilty of securities fraud for providing MNPI that he learned as a member of Goldman Sachs' board of directors to Raj Rajaratnam, so that Rajaratnam could use the information for trading purposes. *See United States v. Gupta*, No. 11 Cr. 907 (JSR) (S.D.N.Y.). Tellingly, when Dikshit became concerned that his illegal trading was being investigated, he ran Google searches about Gupta's conviction and the lawyers whom Gupta had hired to represent him. (PSR ¶ 56; Def. Mem. 24).

Dikshit's sentencing submission notably all but ignores the egregiousness of his conduct and the harm that he caused. Indeed, he goes so far as to suggest that McKinsey, Goldman Sachs, and GreenSky are not "traditional victims," pointing to the fact that none has sought restitution in this case. (Def. Mem. 28). He is wrong. That a victim decides not to seek restitution does not mean that it suffered no harm. Nor are the categories of expenses for which the law permits criminal restitution the true measure of harm these victims actually suffered.

The Government agrees with the defendant that his criminal conduct appears to represent a deviation from an otherwise law-abiding life. (Def. Mem. 1, 25). But the crime was not an isolated occurrence or a momentary lapse in judgment. Dikshit began to trade in GSKY options in late-July 2021, and continued to do so through mid-September 2021. He could have stopped at any point over that nearly eight-week period, but did not. Instead, in the two days before the September 15, 2021 public announcement of the Goldman Sachs-GreenSky transaction, Dikshit made an aggressive, illegal bet: he sold all of the longer-dated GSKY call options that he held and purchased approximately 2,500 out-of-the-money GSKY call options that were due to expire just a few days later, on September 17, 2021. When the deal was announced, the value of

these options skyrocketed, and Dikshit realized approximately $450,000 in profits. (PSR ¶¶ 41-52).

Dikshit's Google searches again reveal that he knew exactly what he was doing. On September 14, 2021, the day before the public announcement of the transaction — and while Dikshit was building a large position in short-dated, out-of-the money GSKY call options — he ran the following Google search: "what happens to options when company is acquired." (PSR ¶ 50). He ran that search, and also looked up information about GreenSky, because he knew the deal was going to be announced the next day and he wanted to make sure he understood how to best exploit this MNPI for profit.

This is not a run-of-the-mill insider trading prosecution. When a senior corporate advisor breaches the trust that he owes to a client by misappropriating confidential information about the very transaction he is advising on and uses that information to commit insider trading in the securities of the very company his client is acquiring, a serious sentence is required. The Court should reject the Probation Department's suggestion of a time-served sentence and the defendant's request for a non-custodial sentence, and should impose a Guidelines sentence.

2. <u>The History and Characteristics of the Defendant</u>

The defendant asks the Court to consider his "hands-on charity work, helping underprivileged members of his Mumbai community." (Def. Mem. 5, 21-24). While the Court should of course consider this aspect of the defendant's life, these good deeds do not excuse his criminal conduct. As Judge Posner has noted, "[w]ealthy people commonly make gifts to charity. They are to be commended for doing so but should not be allowed to treat charity as a get-out-of-jail card." *United States v. Vrdolyak*, 593 F.3d 676, 682 (7th Cir. 2010). In *Vrdolyak*, Judge Posner also cautioned against allowing an affluent offender "to point to the good his money has performed" and demand a lower sentence in return, and warned that this unsavory practice essentially amounts to the purchase of a lower sentence and "suggests that society can always be bought off, even by those whose criminal misconduct has shown contempt for its well-being." *Id.* at 683 (internal citations omitted).[1]

Dikshit also points to the many letters of support, which show that he was not only a successful consultant, but also a loving and responsible husband, father, and son. The defendant further notes that this is his first offense, that he accepted responsibility shortly after his arrest, and that he has lost his career as a consultant. (Def. Mem. 21-27). The Court should, of course, consider each of these factors in fashioning an appropriate sentence.

---

[1] The cases that Dikshit cites are inapposite. (Def. Mem. 24). Each preceded the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005); each addressed the applicability of a downward departure, pursuant to under U.S.S.G. § 5H1.11; and the applicable Guidelines range in each case, even before that departure, was less than in this case. *See United States v. Mehta*, 307 F. Supp. 2d 270 (D. Mass. 2004) (Guidelines range of 18 to 24 months, absent the departure); *United States v. Cooper*, 394 F.3d 172 (3d Cir. 2005) (Guidelines range of 15 to 21 months, absent departure); *United States v. Canova*, 412 F.3d 331 (2d Cir. 2005) (same).

On the other hand, as noted above, the Court should also consider how Dikshit took advantage of the trusted position that he occupied to seek to enrich himself. Dikshit knew full well what he was doing was "wrong" — as he admitted during his guilty plea (Tr. 18) — and that his conduct would harm his client Goldman Sachs, his partners at McKinsey, and investors in GreenSky.

The Court should also consider the defendant's motive for committing the crime, a question the defendant does not address in his submission to the Court. The answer is greed. Dikshit was a partner in McKinsey, all but guaranteeing him a lucrative career and more than comfortable lifestyle for his family. There was no need for him to commit this crime.

3. The Need to Afford Adequate Deterrence

A substantial sentence is also necessary to afford adequate deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). Because securities fraud schemes are both highly lucrative and difficult to detect, significant punishment is necessary to deter others from similar conduct. *See United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) (Posner, J.) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expedited benefits of a crime and hence the punishment required to deter it.").

General deterrence is all the more important to send a message to corporate advisors (and traders) that stealing confidential client information and committing insider trading will be seriously punished. The sentence here should convey that when a Wall Street professional is tempted to cheat because of high rewards (measured in dollars), the downside risk (measured in years in prison) will correspondingly increase.[2] If the penalty is not sufficiently steep, an advisor might determine that an opportunity to make illegal profits outweighed the relatively low risk of being caught and serving a short sentence of imprisonment. But, as the Second Circuit and other courts in this District have recognized, that calculation changes when a potential insider trader considers a prison sentence. *See United States v. Goffer*, 721 F.3d 113, 132 (2d Cir. 2013) ("The district court's assertion that insider trading requires high sentences to alter th[e] calculus" that insider trading is "a game worth playing" given the potential for large profits "is a Congressionally-approved example of giving meaning to the 18 U.S.C. § 3553(a) factors."); *United States v. Jiau*, No. 11 Cr. 161 (JSR) (S.D.N.Y.), Sept. 21, 2011 Tr. 40 (discussing need for general deterrence because "by its very nature [insider trading] is hard to detect but easy to commit and so the temptation is great and the chances of getting away with it, so to speak, are great"); *United States v. Kurland*, 718 F. Supp. 2d 316, 321 (S.D.N.Y. 2010) ("The Court gives significant weight here to the principle of general deterrence, and the importance of serious enforcement of the securities laws, particularly in cases such as this, where an individual with great influence in the securities

---

[2] In a 2013 survey of 250 financial industry professionals involved in securities trading, a full 23 percent of respondents stated that they "likely would engage in insider trading to make $10 million if they could get away with it." Jason M. Breslow, *Survey: One in Four on Wall Street Open to Insider Trading*, PBS Frontline, *available at* https://www.pbs.org/wgbh/frontline/article/survey-one-in-four-on-wall-street-open-to-insider-trading/.

field flouts the law.  Mr. Kurland built his life off of the integrity of the stock markets, and it is this Court's view that he therefore had a special responsibility to safeguard the integrity of those markets, and to set an example:  that insider trading is serious criminal behavior, and not simply an unwritten part of the job description.").

The Government agrees with Dikshit that it is unlikely that he will reoffend.  (Def. Mem. 24-27).  But the Court should reject his suggestion of a sentence without a term of imprisonment.  A significant sentence is necessary to deter white collar criminals and to send the message to Wall Street that the defendant's corrupt scheme will be punished.

4. The Defendant's Other Section 3553(a) Arguments

a. Section 1B1.1 Loss Enhancement

Dikshit makes the familiar argument that the Guidelines enhancement for the applicable gain or loss, under U.S.S.G. § 2B1.1, overstates the seriousness of the offense.  (Def. Mem. 27-28).  This is not such a case.  The applicable Guidelines range here is only 30 to 37 months, which accurately reflects the seriousness of this offense.  Indeed, in *Gupta*, the primary case to which Dikshit points, the applicable Guidelines range was 78 to 97 months, and Judge Rakoff still sentenced Gupta to two-years' imprisonment — even though Gupta was not alleged to have "in any direct sense receive[d] one penny" from the scheme.  *United States v. Gupta*, 904 F. Supp. 2d 349, 350 (S.D.N.Y. 2012).

b. Collateral Consequences

Dikshit also asks the Court to consider the collateral consequences of his conviction because he is not a citizen of the United States.  (Def. Mem. 28-33).  Dikshit points to the fact that because of his status, the Bureau of Prisons ("BOP") will likely designate him to a low-security facility, as opposed to a minimum-security camp; he is not eligible to spend a portion of his sentence in a halfway house; and it is likely that he and his family will be deported following his conviction.  The Government agrees that it is appropriate to consider these factors in fashioning a sentence, but notes that where the defendant is designated is solely in BOP's purview.

Dikshit also argues that after he finishes serving his sentence, he likely will be detained by U.S. Immigration and Customs Enforcement while removal proceedings take place.  (Def. Mem. 30-31).  In connection with sentencing, the Government intends to move for a judicial order of removal, on consent of the defendant.  The purpose of this order, which the Government suggested to the defendant, is to seek to avoid any deportation proceedings and detention, and to help to ensure that the defendant's move back to India following his sentence will proceed smoothly.

The defendant points to this Court's sentencings in *United States v. Connolly*, No. 16 Cr. 370 (CM) (S.D.N.Y.), Nov. 4, 2019 Tr. (Dkt. 457), in support of his request for a non-jail sentence.  (Def. Mem. 32-33).  The Government respectfully submits that that case is distinguishable.  There, it does not appear that the parties sought a judicial order of removal, as they will here.  Moreover, the Court there found that the defendants' roles there were "very minor"

and also took into account the fact that the Government had "cooperated down." *Connolly*, Nov. 19, 2019 Tr. at 86.  Neither consideration is present in this case.

\* \* \* \* \*

Accordingly, the Government respectfully submits that a sentence of imprisonment within the applicable Guidelines range is sufficient but not greater than necessary.

E.  Forfeiture and Restitution

At the defendant's guilty plea, the Court entered a preliminary order of forfeiture. (Dkt. 10; PSR ¶¶ 129-30 & p. 26).  Consistent with that Order, the Government requests that the Court order the defendant to forfeit $455,017.

Counsel to McKinsey, Goldman Sachs, and GreenSky have each advised the Government that their respective clients are not seeking restitution.  Accordingly, the Government is not seeking restitution.  (PSR ¶ 126 & p. 26 ).

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/
Joshua A. Naftalis
Matthew Podolsky
Assistant United States Attorneys
(212) 637-2310 / 1947

cc:  Steven S. Sparling, Esq.
Michael Martinez, Esq.
Kramer, Levin, Naftalis & Frankel LLP