USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _10/20/22_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x

UNITED STATES OF AMERICA,

      -against-                                21 Cr. 760 (CM)

PUNEET DIKSHIT,

               Defendant.

————————————————————————x

## DECISION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT HIS CONVICTION AND SENTENCE

McMahon, J.:

      Defendant is currently serving a twenty-four months sentence for securities fraud. He commenced service of his sentence on October 17, 2022.

      Before the Court is Dikshit's *pro se* motion to "withdraw or otherwise set aside and vacate" his guilty plea "due to ineffective assistance of counsel." Dikshit alleges that his counsel "fail[ed] to inform him about the mandatory deportation he faced upon pleading guilty." (Dkt. 35).

      While styled under Fed. R. Crim. P. 11(d)(2)(B), the relief the defendant seeks is properly construed as a Section 2255 petition. *See* Fed. R. Crim. P. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack."). Indeed, the Court construes defendant's motion as a 28 U.S.C. § 2255 petition.

### Background

      On November 10, 2021, the defendant was arrested, pursuant to a criminal Complaint that charged him with two counts of securities fraud, in violation of (i) 15 U.S.C. §§ 78j(b)

1

and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2 ("Title 15 securities fraud"), and (ii) 18

U.S.C. §§ 1348 and 2 ("Title 18 securities fraud"). On December 15, 2021, the defendant waived

indictment and pled guilty, pursuant to a plea agreement, to a one-count Information that charged

him with Title 15 securities fraud.  In the plea agreement, the defendant specifically

acknowledged that (a) he recognized that "it very likely that his removal from the United States

[would be] presumptively mandatory" as a result of his guilty plea and conviction; (b) he had

"discussed the possible immigration consequences" of his guilty plea and conviction, including

"removal" with defense counsel; (c) he nonetheless "want[ed] to plead guilty"; (d) he waived his

"right to withdraw his guilty plea based on any actual or perceived adverse immigration

consequences," including "removal"; and (e) he waived his right to challenge his conviction or

sentence . . . through litigation under Title 28, United States Code, Section 2255 . . . , on the basis

of any actual or perceived adverse immigration consequences," including "removal":

> The defendant recognizes that, if he is not a citizen of the United
> States, his guilty plea and conviction make it very likely that his
> removal from the United States is presumptively mandatory and
> that, at a minimum, he is at risk of being removed or suffering
> other adverse immigration consequences. . . . The defendant
> acknowledges that he has discussed the possible immigration
> consequences (including removal or denaturalization) of his
> guilty plea and conviction with defense counsel. The defendant
> affirms that he wants to plead guilty regardless of any
> immigration or denaturalization consequences that may result
> from the guilty plea and conviction, even if those consequences
> include denaturalization and/or removal from the United States.
> The defendant understands that denaturalization and other
> immigration consequences are typically the subject of a separate
> proceeding, and the defendant understands that no one,
> including his attorney or the District Court, can predict with
> certainty the effect of the defendant's conviction on the
> defendant's immigration or naturalization status. It is agreed
> that the defendant will have no right to withdraw his guilty plea
> based on any actual or perceived adverse immigration
> consequences (including removal or denaturalization) resulting

2

from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction.

(Plea Agreement, at 5).

During his plea allocution with the Court, the defendant acknowledged that he had read

the plea agreement and reviewed it with his counsel:

> THE COURT: Before you signed this document, did you discuss it with your counsel?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: Did you read the entire document?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: All right. Are you satisfied that you understand everything that's in this letter?
>
> THE DEFENDANT: Yes, I do.

(Ex. B hereto, at 9).  The defendant also acknowledged that he understood the immigration

consequences of his plea:

> THE COURT: Do you understand that adjudication of guilt as a felon may have an adverse impact on your immigration status and on any application that you may have pending or that you may make in the future for permission to remain in the United States or to become a United States citizen?
>
> THE DEFENDANT: Yes. I understand that.

(*Id.* at 14).

While the issue before the Court is whether Mr. Dikshit understood that deportation was likely, *at the time he took his plea*, it is notworthy that he did not raise this issue in connection with his sentencing. Quite the contrary, the defendant submitted a sentencing memorandum that not only acknowledged but emphasized the collateral consequences of his conviction. "Mr. Dikshit's conviction will also result in his removal from the country following any jail term." (Dkt. 17, at 29; *see also id.* at 31-33 (discussing deportation); Dkt. 18, at 7 ("it is likely that he and his family will be deported following his conviction")). And at sentencing, defense counsel focused his argument for leniency on the fact that defendant would be deported as a result of his conviction. (Ex. C, at 12-14, 16). This Court had and has no reason to think that Mr. Dikshit was unaware of the possibility of deportation at the time he used it as a reason to reduce his sentence; certainly, defendant did not jump up at sentencing and say, "Wait a minute, judge, I had no idea I might be deported until my lawyer put it in my sentencing memo."

Dikshit has nonetheless filed the instant petition arguing that his attorney "fail[ed] to inform [him] about the mandatory deportation he faced upon pleading guilty." (Dkt. 35).

Dikshit's former counsel, Michael Martinez and Steven Sparling, Esqs., filed declarations in response to the defendant's petition and the Court's Order. (Dkt. 44, 45). The declarations indicate, among other things, that his then counsel, "advised Mr. Dikshit on numerous occasions before he pleaded guilty on December 15, 2021 to a single count of securities fraud that he would be deported as result of his conviction." (Dkt. 44, at ¶ 4; Dkt. 45, at ¶ 4).

Dikshit filed a response to his former counsel's declarations in which he stated that "at no time leading up to the plea" did his counsel inform him that "his deportation was a virtual certainty;" but he acknowledged that his counsel discussed with him that deportation was a "possibility." (Dkt. 46).

4

<u>Defendant's Ineffective Assistance of Counsel Claim is Without Merit</u>

To establish a claim of ineffective assistance of counsel, a petitioner must show both that
(i) his counsel's performance was deficient in that it was objectively unreasonable under
professional standards prevailing at the time, and (ii) that his counsel's deficient performance
was prejudicial to his case. *See Strickland* v. *Washington*, 466 U.S. 668, 687 (1984); *Bunkley* v.
*Meachum*, 68 F.3d 1518, 1521 (2d Cir.1995). "The petitioner cannot meet the first prong of this
test merely by showing that his counsel employed poor strategy or made a wrong decision."
*Chowdhary*, 2015 WL 273728, at *6. Instead, the defendant must show that "counsel made
errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth
Amendment." *Strickland*, 466 U.S. at 687. In fact, there is a "strong presumption" that defense
counsel's performance fell within the wide range of reasonable professional assistance, and
"the defendant bears the burden of proving that counsel's representation was unreasonable
under prevailing professional norms and that the challenged action was not sound strategy."
*Kimmelman* v. *Morrison*, 477 U.S. 365, 381 (1986) (citing *Strickland*, 466 U.S. at 688-89).

To meet the second prong of the *Strickland* test, the petitioner must show that "there is a
reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different. A reasonable probability is a probability sufficient to undermine
confidence in the outcome." *Strickland*, 466 U.S. at 694. Where a defendant challenges a guilty
plea on the basis of alleged ineffective assistance of counsel, "the defendant must show that
'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have
pleaded guilty and would have insisted on going to trial.'" *United States* v. *Hernandez*, 242
F.3d 110, 112 (2d Cir. 2001) (per curiam) (quoting *Hill* v. *Lockhart*, 474 U.S. 52, 59 (1985)).

5

In the immigration context, the Supreme Court has said that a defendant may make out a claim of ineffective assistance of counsel by showing (i) that counsel failed to affirmatively "advise her client regarding the risk of deportation," and (ii) that, but for counsel's failure, the defendant would rationally have rejected the Government's plea offer and proceeded to trial. *Padilla* v. *Kentucky*, 599 U.S. 356, 366 (2010).

Here, Dikshit does not dispute that he was advised about the possible immigration consequences of his plea; rather, he argues that "[a]t no time leading up to the guilty plea did the defense counsel inform the defendant of the *virtual certainty* of deportation." (Dkt. 35; *see also* Dkt. 46) (Emphasis added). "Not only is this argument belied by the record, it is insufficient as a matter of law to show ineffective assistance of counsel under *Padilla*." *Chowdhary*, 2015 WL 273728, at *6 (citing *Marte* v. *United States*, 952 F. Supp. 2d 537, 541 n.2 (S.D.N.Y. 2013), for the proposition that "[t]his District, post *Padilla*, has denied ineffective assistance of counsel claims, even for mandatory deportation, where the petitioner affirmed his understanding of the potential for deportation during the plea allocution")); *see also Goorte* v. *United States*, Nos. 19 Cr. 646 (LJL), 22 Civ. 1303 (LJL), 2022 WL 4364880, at *17-*22 (S.D.N.Y. Sept. 20, 2022) (same).

Dikshit relies on a Ninth Circuit decision for the proposition that an attorney is constitutionally ineffective if he or she fails to specifically inform a defendant that deportation is "a virtual certainty." (Dkt. 46 at 1-2 (citing *United States* v. *Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011))). But *Bonilla* is not instructive here. As an initial matter, in that case, the defendant moved to withdraw his guilty plea prior to sentencing and judgment, so his motion was decided under standards not applicable to this case, which concerns a Section 2255 petition. *See Bonilla*, 637 F.3d at 986. Furthermore, in *Bonilla*, the defendant's attorney

6

failed to provide *any* advice regarding the potential immigration consequences of the

defendant's guilty plea and, indeed, "mistakenly believed, at the time [the defendant] pled,

that he was a United States citizen." *Id.* at 982, 984. It was in this context that the Ninth

Circuit concluded that it was insufficient that the defendant was aware of some possibility

that he might be deported, as, in the facts of that case, "it was reasonable for [the defendant]

to have inferred that he likely would not be deported if he pled." *Id.* at 984.

In short, even if *Bonilla* were precedential in this Circuit, and even if it were decided

under the applicable standards, it would still not support the principle now advanced by

Dikshit, which is that his attorneys must have specifically stated that his deportation was "a

virtual certainty." Moreover, I credit the testimony of Mr. Dikshit's lawyers, who aver that they *did*

tell him that he would be deported following his guilty plea and conviction. I find his counsel

far more believable than a fraudster like the defendant.

In sum, Dikshit has failed to meet his burden under *Strickland*:

(1)  The plea agreement made clear that the defendant (a) recognized that "it very likely

that his removal from the United States is presumptively mandatory"; (b) had "discussed the

possible immigration consequences," including "removal" with his counsel; (c) nonetheless

"want[ed] to plead guilty"; and (d) waived his "right to withdraw his guilty plea based on any

actual or perceived adverse immigration consequences," including "removal." (Ex. A, at 5).

(2)  Dikshit acknowledged at the plea proceeding that he had discussed the plea

agreement with his counsel, read the agreement in its entirety, and was satisfied with house

counsel. (Ex. B, at 9). "A defendant cannot disavow his sworn statement made at his plea

allocution by making conclusory allegations in the course of a subsequent challenge to the

conviction or sentence." *Ottenwarde* v. *United States*, No. 12 Civ. 6537 (JGK), 2013 WL

1242632, at *4-*5 (S.D.N.Y. Mar. 28, 2013) (rejecting Section 2255 claim based on adverse

immigration consequences as untimely) (citing *Blackledge* v. *Allison*, 431 U.S. 63,.74 (1977));

*accord Chowdhary*, 2015 WL 273728, at *6.

(3)  The declarations from counsel make clear that they "advised Dikshit on numerous

occasions before he pleaded guilty on December 15, 2021 to a single count of securities fraud

that *he would be deported as result of his conviction*." (Dkt. 44, at ¶ 4; Dkt.45, at ¶.4)

(Emphasis added).  The declarations explain that counsel's discussions with Dikshit about how

a conviction for insider trading would result in deportation began in mid-October 2021, in the

context of whether the defendant should self-report his conduct to authorities— which the

defendant ultimately did not do. (Dkt. 44, at ¶ 5). The declarations also state that, after the

defendant was arrested and a plea offer was extended, his counsel "reiterated that Mr. Dikshit

would be deported following his conviction" and "Mr. Dikshit did not have questions about

whether he would be deported." (*Id.* at ¶ 7; *see also id.* at ¶ 12). Moreover, counsel explained to

the defendant that they intended to argue in their sentencing submission that the Court should

consider "his expected deportation as a relevant collateral consequence— an argument that

they made, and one the Court considered. (*Id.* at ¶¶ 8, 14).  Indeed, at sentencing the Court

acknowledged as much: "It is inevitable that you are going to be deported." (Ex. C, at 22).

Defense counsel also consulted with immigration counsel, including regarding the advisability of

the defendant signing a judicial order of removal because of the likelihood of the defendant's

deportation. (*Id.* at ¶¶ 9-10, 13, 17-18; Ex. C, at 13 ("Mr. Dikshit consulted many immigration

attorneys concerning the offer to have the judicial order of removal today [at the time of

sentence].")).

8

Fourth and finally, the specter of defendant's deportation hung over the sentencing proceeding, as counsel implored the Court to spare his client jail time; arguing, *inter alia*, that defendant's loss of livelihood and pending deportation were punishment enough. It defies belief that counsel would make such an argument without having first fully discussed it with his client.

Nor has Dikshit establish prejudice. As noted above, Dikshit did not make a motion to withdraw his guilty plea before sentencing, and he cannot credibly claim that he rationally would have proceeded to trial had he been advised differently. Given the overwhelming nature of the evidence against him, it was both rational and advisable for Dikshit to conclude that he could minimize the length of any prison sentence by accepting responsibility immediately, waiving indictment, and pleading guilty. Thus, he has failed to establish a reasonable probability that, but for his counsel's alleged ineffectiveness, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The motion is denied—the petition is dismissed.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997). Further, the Court finds, pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from an order denying Dikshit's motion would not be taken in good faith. *See Feliz v. United States*, No. 01-cv-5544, 2002 WL 1964347, at *7 (S.D.N.Y. Aug. 22, 2002).

Dated: October 20, 2022

_____
District Court Judge

9